(14 Misc. Rep. 446.)

### FLYNN v. MAINE STEAMSHIP CO.

(City Court of New York, General Term. November 26, 1895.)

MASTER AND SERVANT—INJURY TO SERVANT.

Failure of a steamship company to place fenders between a vessel and lighter while a cargo is being transferred will not render it liable for injuries to an employé engaged in making the transfer, caused by the absence of the fenders, where it appears that the employé was an experienced longshoreman, and that fenders provided by the company were placed near at hand on the dock.

Appeal from trial term.

Action by John Flynn against the Maine Steamship Company for injuries caused by alleged negligence of defendant in failing to place fenders between the lighter and vessel while plaintiff, an experienced longshoreman, its employé, was unloading the cargo. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before FITZSIMONS, McCARTHY, and CONLAN, JJ.

Charles C. Nadal, for appellant.

Grossman & Worhaus, for respondent.

CONLAN, J.  This appeal is taken from a judgment entered upon a verdict and from an order denying a motion for a new trial.  The action was brought to recover damages for alleged injuries sustained by the plaintiff while engaged in unloading the cargo of the steamer Cottage City onto the lighter Holland, at the defendant's dock in the city of New York, on the 16th of March, 1894.  Upon the trial of the action there was some conflict of evidence as to what was the proper use or employment of fenders between vessels when engaged in loading or unloading cargo.  It was contended for the plaintiff that the use of these fenders was to prevent accidents of the kind complained of, while the claim on the part of the defendant was to the effect that their sole employment was to prevent the vessels coming together, and by so doing chafing the side of the vessel.  The defendant claims that fenders were put between the steamer and the lighter as soon as the lighter came alongside of the other vessel.  There is no dispute but what fenders, and also a gang plank, were at hand, and provided by the defendant, and were always to be had at the dock when required.  Indeed, it is asserted by the plaintiff's witnesses that they were brought from the dock, and placed between the vessels, immediately after the accident; and there does not appear to have been any further accident after this alleged employment of the fenders.  It is also in evidence that when the lighter is much lower than the unloading vessel a gang plank is sometimes used for the passage to and fro of persons engaged in the work of removing the cargo.  In this case it does not appear that the deck of the lighter was more than 10 inches below the guard rail of the steamer at the time of the accident, or that any one thought of the necessity for the use of a gang plank, although one was near by and on the dock alongside of which the steamer was moored.  It is in evidence also that rope fenders are sometimes employed, and at others fenders made of wood, there being some dispute as to the superiority of one kind over the other.  However, that is not material to the questions to be determined upon this appeal, since it is practically conceded by the plaintiff that the use of either would have prevented the accident.  It was not necessary for the jury to pass upon the question as to what kind of fenders were used, nor do they appear to have done so.  Upon the plaintiff's theory, they found that no fenders were employed, at least until after the accident; and, if we are correct in this view of the case, the judgment below was predicated upon the theory that—First, fenders were necessary to prevent accidents of this kind, and, second, that it was the duty of the defendant to provide and use them.

The first of these propositions may be conceded to the respondent without running counter to any conclusions which may be reached by an application of the principles of law governing the second, viz. as to the duty of the master to provide and use the fenders, in order to properly protect the person of the plaintiff and such other persons as were similarly employed.  The plaintiff was an experienced longshoreman, in the employ of the defendant at the

time of the accident, and under the direction of the head stevedore, whose duty it was to superintend the unloading of the steamer; and it is in evidence that the latter was under the orders of the mate, who was in charge of the steamer at the time of unloading. The accident consisted in the plaintiff's heel being caught between the deck of the lighter and the guard rail of the steamer as the former vessel rose against the side of the latter from the action of the tide or some other disturbance of the water in the slip where the vessels were unloading.

It is the well-settled rule of law in cases like the one at bar that the master must provide adequate and safe appliances, and such as are usual in the particular employment in which the servant is engaged; and the court below, following out this principle, charged the jury at folio 188 of the printed case: "That if the defendant provided or had at hand a gang plank which might have been used, but which McQuaig [the stevedore] or the men of his gang neglected to use, the defendant is not guilty of negligence, and the plaintiff cannot recover;" and also, at the same folio: "That if the plaintiff noticed or might have noticed the absence of the fenders before the accident, and made no protest, he assumed the risk incident thereto, and cannot recover." As we have said before, it cannot avail the plaintiff that the jury may have found that there were no fenders between the vessels at the time of the accident, if such fenders were provided by the master, and were near at hand, and could have been placed in position, if deemed necessary. It is nowhere disputed that fenders were provided, and were near at hand, as also a gang plank, and that they were put in position by the persons engaged in unloading the steamer, after the accident to the plaintiff. In a recent case it was said by the court, after reviewing many authorities: "It is impossible that a master himself can control the detail work of any corporation or any private business of any size." This injury arose from negligence which was connected with the detail work. "Such negligence is not the negligence of the master, but is purely the negligence of the coservant, and of this there is no possible question." The evidence is overwhelming that proper appliances were at hand, and could have been used; and the failure to employ them is not negligence chargeable to the master. He did all the law reasonably required of him in providing and having at hand to be used proper appliances; and, as we have seen above, their nonuse was negligence consequent upon the detail work in which the plaintiff was engaged, and was not the negligence of the master.

Sympathy for the plaintiff does not carry us to the extent of sustaining a judgment which is not founded upon correct principles of law, and we are inclined to the views of the court in the recent case of Ludlow v. Bridge Co.,[1] that "this case is one of those unfortunate accidents which no one can be made to pay for, at least no employer"; and we are forced to the conclusion reached by the court in that case. The complaint should have been dismissed upon the trial. We do not think it necessary to enlarge further upon

[1] 36 N. Y. Supp. ——.

this question, nor to discuss any of the other questions presented upon this appeal, having reached the conclusion that the judgment appealed from must, for the reasons stated, be reversed.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.